# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

APOLLO ENERGY, LLC

VERSUS

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON

CIVIL ACTION

NO. 17-1741-JWD-RLB

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss for Failure to State a Claim* (Doc. 18) filed by Underwriters at Lloyd's of London, specifically QBE Marine & Energy syndicate to Policy No. 16CGLN10685 ("QBE" or "Defendant"). Plaintiff Apollo Energy, LLC ("Apollo" or "Plaintiff") opposes the motion. (Doc. 20.) Defendant has filed a reply. (Doc. 21.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion is granted.

## I.     Relevant Factual and Procedural Background

### A.  Relevant Factual Background

The relevant factual allegations are primarily taken from Plaintiff's *First Amended Complaint for Declaration of Coverage, Bad Faith and Damages* ("*Amended Complaint*" or "*Am. Compl.*") (Doc. 17). All allegations are assumed to be true for purposes of this motion and construed in a light most favorable to Plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The allegations are also taken from the insurance policy attached to the *Amended Complaint* and Defendant's motion to dismiss, as they are referenced in the *Amended Complaint* and central to Plaintiff's claims. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191,

205 (5th Cir. 2007) (citing *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

This is an insurance case arising from an oil spill. Defendant issued a Commercial General Liability Insurance Policy to Plaintiff bearing Policy Number: 16CGLN10685 ("the Policy"). (*Am. Compl.* ¶ 4.) The effective policy period was May 2, 2016 through May 2, 2017. (*Id.*)

The Policy contained a Total Pollution Exclusion ("TPE"). The TPE provided in relevant part:

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** 'Bodily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants'; or

**(b)** Claim or 'suit' by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, 'pollutants'.

(Policy, *Am. Complaint*, Ex. A, Doc. 17-1 at 16.)

"Pollutant" is defined in the Policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (*Id.* at 14.)

The Policy also contained an endorsement entitled the "Coverage Buyback Seepage and Pollution Buyback." (*Id.* at 17.). This provision stated:

> Notwithstanding the Total Pollution Exclusion attached to this policy, the exclusion shall not apply provided that the insured establishes that all of the following conditions have been met:
>
> **A.** The 'occurrence' was accidental and was neither expected nor intended by the insured. An accident shall not be considered unintended or unexpected unless caused by some intervening event neither expected nor intended by the insured.
>
> **B.** The 'occurrence' can be identified as commencing at a specific time and date during the term of this policy.
>
> **C.** The 'occurrence' became known to the insured within 72 hours after its commencement and is reported to the Company within 30 days thereafter.
>
> **D.** The 'occurrence' did not result from the insured's intentional and willful violation of any government statute, rule or regulation.

(*Id.*)

This provision was amended by Endorsement 34 to provide:

### ENDORSEMENT NO. 34

This endorsement forms a part of the policy to which it is attached. Please read it carefully.

## SEEPAGE AND POLLUTION BUYBACK AMENDMENT

In consideration of the premium charged, it is agreed that Condition C of form SC-2035 is hereby amended to read as follows:

**C. The "occurrence" became known to the insured within 30 days after its commencement and is reported to the Company within 90 days thereafter.**

All other terms and conditions remain unchanged.

(Policy, Def.'s *Mot. to Dismiss*, Ex. 1, Doc. 18-2 at 59) (the "Coverage Buyback Seepage and Pollution Buyback" and Endorsement No. 34 are, collectively, the "Buyback").

On June 1, 2016, an oil spill occurred because of a backup of a water container and pump at one of Apollo's wells in Iberville Parish. (*Am. Compl.* ¶ 8.) The spill required clean up and remediation. (*Id.*) Apollo had this work performed "by appropriate outside vendors" for the cost of $143,643.64. (*Id.*) Apollo reported this to QBE through its agent on November 1, 2016—about one hundred and fifty-three days (153) after the oil spill. (*Id.*) The agent told Apollo there was no coverage under the policy. (*Id.*)

Apollo disagreed. (*Am. Compl.* ¶ 9.) On May 5, 2017—or about three hundred, thirty-eight days (338) days after the spill—Apollo informed Defendant of the claim by letter through the Claims Department of Burnett & Company, Inc. (*Id.*) Apollo contended that there was coverage and provided "appropriate documentation of proof of loss." (*Id.*) Specifically, Apollo stated that the Seepage and Pollution Buyback Endorsement applied, for a number of reasons. (*Id.*) Critical to this ruling, Apollo specifically alleges:

> Apollo conceded that it had not met the 90-day reporting period, but noted that the report of November 1, 2016, occurred within 150 days of the occurrence and within the policy period, and further pointed out the lack of prejudice to QBE by the delay because the cleanup and remediation was timely performed. The invoices indicate cleanup began on June 1, 2016, as soon as the leak was noted. The only claim made by Apollo was for reimbursement of the cleanup and remediation costs of $143,643.64, for which it provided all invoices and documentation as satisfactory proof of loss to QBE. Clearly, there was no prejudice to QBE. It would have been no different to QBE had the spill and clean up been reported on the 89th day, rather than the 150th day, because all of the cleanup and remediation work had already been done. QBE could have taken no steps to alter those actions. Therefore, QBE was not prejudiced by the delay in reporting.

(*Am. Compl.* ¶ 10.) Apollo again alleges that "QBE was not prejudiced by the late reporting because the cleanup and remediation was timely and properly performed, and the reporting occurred within the policy period." (*Id.* ¶ 11.)

QBE denied the claim. (*Id.* ¶ 12.) QBE stated that Apollo could not meet the requirements of the Buyback because it failed to satisfy the 90-day reporting requirement. (*Id.*) Defendant also cited the fact that Apollo "failed to follow Form BEP-808 (11 15) that notice of an incident be reported immediately to Burnett & Company, Inc." (*Id.*) According to Plaintiff, QBE had the burden of investigating and showing prejudice after getting notice. (*Id.*)

In the *Amended Complaint*, Plaintiff asserts that the Buyback provision applies: (1) because the main case Defendant relies upon—*In Re: Matter of Complaint of Settoon Towing, L.L.C.*, 720 F.3d 268 (5th Cir. 2013)—is distinguishable with respect to the policy language; and (2) an oil spill is not a "pollutant" under 42 U.S.C. §9601(14), so the TPE at issue here is not applicable. (*Am. Compl.* ¶¶ 13–16.) With respect to this second argument, Plaintiff further alleges that:

The applicability of a TPE is determined by the following considerations:

(1)     Whether the insured is a "polluter" within the meaning of the exclusion;

(2)     Whether the injury-causing substance is a ["]pollutant["] within the meaning of the exclusion; and

(3)     Whether there was a ["]discharge, dispersal, seepage, migration, release or escape["] of a pollutant by the insured within the meaning of the policy.[]

(*Id.* ¶ 17.) Plaintiff concludes: "Apollo is not a 'polluter' and the oil that 'escaped' is not a pollutant. Nor was its 'escape' intentional." (*Id.* ¶ 18.)

Plaintiff brings three claims for relief. First, Apollo seeks coverage under the Policy and reimbursement for the clean-up and remediation costs of $143,643.64 (*Am. Compl.* ¶ 19.) Plaintiff urges that the TBE doesn't apply because of the Buyback. (*Id.* ¶ 23.) Second, Plaintiff claims

damages, penalties, and attorney's fees under La. R.S. 22:1892(A)(3) for failure to initiate loss adjustment and to pay the claim within the statutorily mandated deadlines. (*Id.* ¶ 25.) And third, Plaintiff seeks damages, penalties, and attorney's fees under La. R.S. 22:1973 and La. R.S. 22:1892 for Defendant's alleged breach of its duty of good faith and fair dealing by failing to timely pay Plaintiff, all without cause (*Id.* ¶¶ 26–28.)

### B. Relevant Procedural Background

Defendant previously moved to dismiss this case on the same grounds currently advanced: failure to provide timely notice under the Buyback. (Doc. 7-1 at 6-8.) In ruling on the motion (Doc. 16), the Court did not go so far as to dismiss Plaintiff's claims, but the Court did find that the original complaint did not "provide fair and adequate allegations concerning the initial inapplicability of the total pollution exclusion." (Doc. 16 at 7.) On the record before the Court, dismissal was not appropriate, but the Court gave Plaintiff leave to amend to clarify its allegations. (Doc. 16 at 6–8.)

Plaintiff subsequently filed the *Amended Complaint* (Doc. 17), which attached the relevant Policy provisions. (Doc. 17-1.) Defendant then filed the instant motion (Doc. 18) and attached the entire Policy (Doc. 18-2).

### II. Relevant Standard

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De* C.V., No. 10-00177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in

the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03

(5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful,

but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

### III.     Discussion

#### A.  Parties' Arguments

Defendant argues that (1) contrary to Plaintiff's position, it is well established in Louisiana law that oil is a "pollutant," and (2) Plaintiff failed to satisfy the Buyback's requirements because it admitted in the *Amended Complaint* that it failed to give timely notice to Defendant of the occurrence. As to this second argument, Defendant primarily relies on a recent Fifth Circuit case— *In re Matter of Complaint of Settoon Towing, L.L.C.*, 720 F.3d 268 (5th Cir. 2013)—where the buyback language was allegedly identical and the appellate court found that failure to give notice precluded recovery, even where there was no prejudice shown. Defendant also distinguishes Plaintiff's case about notice on the grounds that it involved an automobile policy, not a pollution exclusion.

Plaintiff responds that this Court previously held that deciding whether a pollution exclusion applies depends on the facts and policy language in each case. Here, the Fifth Circuit case is distinguishable because the language in that case was "stronger" than it is in this case. As a result, Defendant had to show prejudice, and he has failed to do so. Additionally, the party in the Fifth Circuit case was a sophisticated user, whereas, here, the plaintiff is a small Louisiana business. Plaintiff thought it was acting properly when it immediately retained a cleanup company and then gave notice later. In the alternative, Plaintiff seeks leave to amend to plead that it was an "unsophisticated business".

Defendant replies that Plaintiff's arguments are misplaced. Contrary to Plaintiff's opposition, *Settoon Towing* and other cases have excluded coverage even where the terms "condition" and "intent and effect" are not in the policy. All that is required is that the Buyback have a notice provision, and, here, Plaintiff failed to comply. Second, Fifth Circuit law finds that

businesses are sophisticated (particularly oil companies), whereas consumers are not. According to Defendant, denying the motion to dismiss would essentially mean rewriting the policy. Lastly, since two prior amendments have been allowed, the Court should dismiss with prejudice.

### B. Interpretation of Insurance Policies

In *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583 (La. 2007), the Louisiana Supreme Court laid out the comprehensive and well-established framework for interpreting insurance policies under Louisiana law, which this Court now quotes in full:

> In analyzing insurance policies, certain elementary legal principles apply. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *LeBlanc v. Aysenne*, 921 So. 2d 85, 89 (La. 2006); *Edwards v. Daugherty*, 883 So. 2d 932, 940 (La. 2004); *Cadwallader v. Allstate Insurance Co.*, 848 So. 2d 577, 580 (La. 2003); *Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Co.,* 630 So. 2d 759, 763 (La. 1994).
>
> According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent. See, La. Civ. Code art. 2045; *Edwards*, 883 So. 2d at 940; *Cadwallader*, 848 So. 2d at 580; *Blackburn v. National Union Fire Insurance Co. of Pittsburgh*, 784 So. 2d 637, 641 (La. 2001). Courts begin their analysis of the parties' common intent by examining the words of the insurance contract itself. *See* La. Civ. Code art. 2046; *Succession of Fannaly v. Lafayette Insurance Co.*, 805 So. 2d 1134, 1137(La. 2002); *Blackburn*, 784 So. 2d at 641 ("[T]he initial determination of the parties' intent is found in the insurance policy itself."). In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. *See* La. Civ. Code art. 2047; *Edwards*, 883 So. 2d at 940-41; *Cadwallader*, 848 So. 2d at 580; *Succession of Fannaly*, 805 So. 2d at 1137.
>
> An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. *See* La. Civ. Code art. 2050; *Hill v. Shelter Mutual Insurance Co.*, 935 So. 2d 691, 694 (La. 2006); *Succession of Fannaly*, 805 So. 2d at 1137; *Peterson v. Schimek*, 729 So. 2d 1024, 1029 (La. 1999). Neither should an insurance policy be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to

achieve an absurd conclusion. *LeBlanc*, 921 So. 2d at 89; *Edwards*, 883 So. 2d at 941; *Cadwallader*, 848 So. 2d at 580; *Peterson*, 729 So. 2d at 1028.

When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. *See* La. Civ. Code art. 2046; *Hill*, 935 So. 2d at 694; *Peterson*, 729 So. 2d at 1028. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Cadwallader*, 848 So.2d at 580; Succession of *Fannaly*, 805 So.2d at 1138. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. *Edwards*, 883 So. 2d at 941; *Succession of Fannaly*, 805 So.2d at 1138; *Peterson*, 729 So.2d at 1029.

Nevertheless, if, after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage. *See* La. Civ. Code art. 2056; *Succession of Fannaly*, 805 So. 2d at 1138; *Peterson*, 729 So. 2d at 1029. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. *Edwards*, 883 So.2d at 941; *Cadwallader*, 848 So. 2d at 580; *Carrier v. Reliance Insurance Co.,* 759 So. 2d 37, 43 (La. 2000). This strict construction principle applies, however, only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. *Edwards*, 883 So. 2d at 941; *Cadwallader*, 848 So. 2d at 580; *Carrier*, 759 So. 2d at 43.

The determination of whether a contract is clear or ambiguous is a question of law. Edwards, 883 So. 2d at 941; *Cadwallader*, 848 So. 2d at 580; *Louisiana Insurance Guaranty Association*, 630 So. 2d at 764. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. *Robinson v. Heard,* 809 So. 2d 943, 945 (La. 2002); *Peterson*, 729 So. 2d at 1029.

*Sims*, 956 So. 2d at 588-90.

The Louisiana Supreme Court has also made clear:

When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. Importantly, when making this determination,

any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage.

*Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00); 774 So. 2d 119, 124, *opinion corrected on reh'g*, 2000-0947 (La. 3/16/01); 782 So. 2d 573 (citations omitted).

### C. Analysis

Having carefully considered the law, the allegations of the *Amended Complaint*, and the Policy as a whole, the Court agrees with Defendant's position. In sum: (1) the TPE applies, as the issue is unopposed by Plaintiff and, even if it weren't, Defendant would be right on the merits; and (2) because Plaintiff admits that it did not satisfy the notice requirement of the Buyback, and because the Fifth Circuit does not require prejudice for the particular policy language at issue, the Buyback exception to the TPE does not apply, and Plaintiff has no coverage under the Policy for the events in question.

### 1. The TPE Applies.

In its *Amended Complaint*, Apollo asserted that the TPE did not apply for two reasons. First, oil was not a "pollutant" within the meaning of the TPE because the oil spill was not a "pollutant" under 42 U.S.C. § 9601(14). (*Am. Compl.* ¶ 16.) Second, Plaintiff stated (and Defendant agrees in its motion) that the applicability of the TPE depends on three factors that were first articulated in *Doerr v. Mobile Oil Corp.*, 2000-0947 (La. 12/19/00); 774 So. 2d 119, 135, *opinion corrected on reh'g*, 2000-0947 (La. 3/16/01)):

> (1) Whether the insured is a "polluter" within the meaning of the exclusion;
> (2) Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and
> (3) Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.

(*Id.*) Plaintiff stated in the operative complaint that "Apollo is not a 'polluter' and the oil that 'escaped' is not a pollutant. Nor was its 'escape' intentional." (*Am. Compl.* ¶ 18.)

The Court will reject these arguments on the ground of waiver. "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (citing *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n. 10 (S.D. Tex. 2003)); *see also United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation . . . is a failure to brief and constitutes waiver"). "By analogy, failure to brief an argument in the district court waives that argument in that court." *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp. 2d at 748 n. 10); *see also Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

Here, Apollo completely failed in its opposition to the instant motion to respond to Defendant's argument that the oil was a "pollutant" within the meaning of the Policy or that all three *Doerr* factors were met. (Doc. 18-1 at 7–8.) On this ground alone, the Court could find that the TPE applies. *See JMCB*, 336 F. Supp. 3d at 634 (finding that operative complaint could be dismissed because plaintiff failed to respond to the substance of defendant's arguments).

But, even if the Court were to consider the allegations of the *Amended Complaint* as being an opposition to the motion to dismiss, the Court would reject these arguments. First, contrary to Plaintiff's allegation, oil is a "pollutant" under the Policy. The Policy defines "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes,

acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed." (Policy, *Am. Compl.*, Ex. A., Doc. 17-1 at 14.)  The Court has little doubt that, under the clear and unambiguous language of the policy, oil is, at the very least, a "liquid . . . contaminant" such as a "chemical."  Louisiana law confirms this. *Lodwick, L.L.C. v. Chevron U.S.A., Inc.*, 48,312 (La. App. 2 Cir. 10/2/13); 126 So. 3d 544, 554 (finding, in oilfield legacy lawsuit that dealt with pollution exclusion substantially similar to the instant case, that "[t]here is also no question that [naturally occurring radioactive material ('NORM')], produced water, drilling fluids, chlorides, *hydrocarbons*, and heavy metals fall within the definition of pollutants as defined in the policy. These materials are at the very least contaminants, chemicals, or wastes." (emphasis added)); *Grefer v. Travelers Ins. Co*., 04-1428 (La. App. 5 Cir. 12/16/05); 919 So. 2d 758, 768–69 ("Materials extracted from the ground through oilfield drill pipe, such as oil, sludge, grease, salt water, and other hazardous and/or toxic oil production waste, are all potential pollutants.").

Second, the *Doerr* factors are met.  As to the first—whether Apollo is a "polluter" within the meaning of the TPE—the Louisiana Supreme Court has explained:

> [T]he determination of whether an insured is a "polluter" is a fact-based conclusion that should encompass consideration of a wide variety of factors. In making this determination, the trier of fact should consider the nature of the insured's business, whether that type of business presents a risk of pollution, whether the insured has a separate policy covering the disputed claim, whether the insured should have known from a read of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business, who the insurer typically insures, any other claims made under the policy, and any other factor the trier of fact deems relevant to this conclusion.

*Doerr* 774 So. 2d at 135.  Here, Apollo was in the business of operating oil wells (*Am. Comp.* ¶ 8) which clearly presented the risk of pollution. *See Lodwick*, 126 So. 3d at 561 ("Jurisprudence has established that oil field operators and producers are 'polluters' under the *Doerr* test due to the fact

that oil drilling and related activities present a clear and obvious risk of pollution" (citing *Grefer*, 919 So. 2d at 768 ("The nature of ITCO's business was the cleaning and recycling of used oilfield pipe. Oil drilling and related activities present a clear and obvious risk of pollution. The cleaning of used oil field drill pipe is an oil extraction related activity.")). Further, Apollo should have known from a reading of the TPE that a separate pollution policy would be required. The Court finds that Apollo was a "polluter" under the first *Doerr* factor.

As to the second factor, the *Doerr* court stated:

[T]he determination of whether the injury-causing substance is a "pollutant" is also a fact-based conclusion that should encompass a wide variety of factors. As pointed out above, there are a variety of substances that could fall within the broad definition of irritants and contaminants as provided in this policy. For example, under pollution exclusions similar to the one at issue here, courts have found "pollutant" to include everything from asbestos, carbon monoxide, gasoline, lead paint, and some pesticides; on the other hand, some courts have found that "pollutants" do not include muriatic acid, styrene resins, and other forms of pesticide. See Russ, *supra*, at § 127:12 (collecting authorities). Consequently, when making this determination, the trier of fact should consider the nature of the injury-causing substance, its typical usage, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, whether the substance is one that would be viewed as a pollutant as the term is generally understood, and any other factor the trier of fact deems relevant to that conclusion.

*Doerr*, 774 So. 2d at 135. Here, the Court explained above why oil was a pollutant. *See Lodwick*, 126 So. 3d at 554, 561; *Grefer*, 919 So. 2d at 768–69, 771.[1]

Lastly, as to the final *Doerr* factor, the Louisiana Supreme Court said:

[t]he determination of whether there was "discharge, dispersal, seepage, migration, release or escape" is likewise a fact-based conclusion that must result after a consideration of all relevant circumstances. Specifically, the trier of fact should consider whether the pollutant was intentionally or negligently discharged, the amount of the injury-causing substance discharged, whether the actions of the

---

[1] The Court notes that *In re Matter of Complaint of Settoon Towing, L.L.C.*, 720 F.3d 268 (5th Cir. 2013) also supports this conclusion. While the *Doerr* factors are not discussed by the Fifth Circuit in *Settoon Towing*, the appellate court nonetheless found that pollution exclusions barred coverage after an allision between a vessel and an oil well caused "damage to the wellhead and uncontrolled discharge of oil into the water." *Id.* at 271, 280; *see also* Part III.C.2, *infra*.

alleged polluter were active or passive, and any other factor the trier of fact deems relevant.

*Doerr*, 774 So. 2d at 135–36. Here, though the discharge was unintentional, the Court has little doubt that the amount of discharge—which caused over one-hundred, forty thousand dollars' worth of cost in remediation and clean up (*Am. Compl.* ¶ 8)—constituted a "discharge, . . . release or escape" of the pollutant. *See Grefer*, 919 So. 2d at 772 ("Most courts agree that where there has been a discharge or release of contaminants, the fact that an insured did not intend the damages that arose from such discharge or release does not alter the applicability of the exclusion. That is, the fact that the damages were unexpected or unintended is not material in determining the applicability of this pollution exclusion." (citation and quotation omitted)).

Thus, even if the Court were to overlook the Plaintiff's waiver, Defendant would still prevail. As the Louisiana Supreme Court explained, "[i]t is appropriate to construe [a] pollution exclusion clause in light of its general purpose, which is to exclude coverage for environmental pollution, and under such interpretation, [the] clause will not be applied to all contact with substances that may be classified as pollutants." *Doerr*, 774 So. 2d at 135. The Court has considered this standard for construction in light of the above three *Doerr* factors and finds that the TPE applies to exclude coverage for Apollo's oil spill.

## 2. The Buyback Exception Does Not Apply.

The next question is whether the Buyback exception to the pollution exclusion applies to cancel the effects of the TPE. In short, it does not.

As Defendant recognizes, the case turns on the proper interpretation of *In re Matter of Complaint of Settoon Towing, L.L.C.*, 720 F.3d 268 (5th Cir. 2013). This case involved an allision between a vessel and an oil well which caused "damage to the wellhead and uncontrolled discharge

of oil into the water." *Id.* at 271. The issue in the case was whether certain umbrella policies provided coverage. *Id.*

All of the policies provided coverage for maritime collisions, but they also contained pollution exclusions modified by buyback provisions. *Id.* at 272–75. Specifically, the relevant policies contained the following pollution exclusion:

> I. ABSOLUTE POLLUTION EXCLUSION
> (A) In consideration of the premium charged, it is hereby agreed that this policy shall not apply to any liability for . . . "property damage" . . . arising out of the . . . "release" of "pollutants" into . . . any watercourse, water supply, reservoir or body of water.
>
> It is further agreed that the intent and effect of this exclusion is to delete from any and all coverage's afforded by this policy any "occurrence", claim, suit, cause of action, liability, settlement, judgement, defense costs or expenses in any way arising out of such "release". . . .

*Id.* at 274. The buyback provisions for these policies were virtually identical to the ones in the instant case. Specifically, the buyback provisions for Bumbershoots 2 and 3 provided:

> II. SUDDEN AND ACCIDENTAL BUYBACK
> (A) It is hereby agreed that the above Absolute Exclusion shall not apply provided that the Named Assured establishes that all of the following conditions have been met:
> . . .
> (4) The occurrence became known to the assured within 72 hours after its commencement.
> (5) The occurrence was reported in writing to those underwriters within 30 days after having become known to the assured.
> . . .
> ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.

*Id.* at 274.

The insurers filed a declaratory judgment action alleging that they were not liable for the losses from the allision because the vessel owner did not comply with the notice provisions in the buyback provisions. *Id.* The district court found no liability on the second and third Bumbershoot policies on this ground. *Id.*

16

On appeal, the vessel owner argued that there was liability on these policies because the insurer was required to show prejudice. *Id.* at 276. The owner claimed that, because the insurer could not show prejudice, they were liable. *Id.*

The Fifth Circuit rejected this argument and affirmed. After looking at non-binding Texas law, the appellate court turned to controlling Louisiana law. *Settoon Towing*, 720 F.3d at 276–77. The Fifth Circuit explained that, in an earlier case from this circuit interpreting Louisiana law, the court held that "where 'immediate notice' is an express condition precedent to coverage in the main body of the policy, 'failure to comply with the provision precludes coverage' and 'prejudice need not enter the calculation.' " *Id.* at 277 (quoting *Joslyn Mfg. Co. v. Liberty Mut. Ins. Co.*, 30 F.3d 630, 633–634 (5th Cir. 1994)). "Where policy holders are 'consumers unlikely to be conversant with all the fine print of their policies,' " strict adherence to notice provisions that are conditions precedent is not as important as when 'both parties are sophisticated businesses, which are expected to be conversant with the terms of their contracts.' " *Id.* (citing *Joslyn*, 30 F.3d at 634). But the Fifth Circuit also made clear that, if notice is not a condition precedent to coverage, then an " 'insurer cannot deny coverage merely because its insured failed to give notice of loss as soon as practical.' " *Id.* (quoting *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1172 (5th Cir. 1992)). Ultimately, "Louisiana case law [did] not directly address whether, to deny recovery, an insurer must show prejudice resulting from an insured's non-compliance with a condition precedent in an endorsement that requires notice within a set time period after an occurrence." *Id.* (citation omitted).

After analyzing this case law, the Fifth Circuit then provided some guidance on the interpretation of these policies:

> Whether a notice provision is a "condition precedent" to recovery depends on the language of the policy; we have held that "the words 'condition precedent' mean

exactly what they say, and failure to comply with this provision preclude[s] recovery, regardless of whether prejudice [is] shown." *Gulf Island, IV v. Blue Streak Marine, Inc.,* 940 F.2d 948, 955 (5th Cir.1991) (citing *MGIC,* 838 F.2d at 1385–86). *Gulf Island, IV* went on to state that certain language short of the exact phrase "condition precedent" may not be sufficient to make a notice requirement a condition precedent to recovery:

> The Lloyd's policy requires notice only when the assured "may reasonably conclude" that a covered occurrence has taken place. This language falls short of the express condition precedent language that we held in *MGIC* and *Auster Oil* [ *& Gas, Inc. v. Stream,* 891 F.2d 570 (5th Cir.1990) ] was necessary to make giving notice a condition precedent to recovery.

*Gulf Island, IV,* 940 F.2d at 956.

*Settoon Towing*, 720 F.3d at 277–78. The Fifth Circuit then found:

> Turning to the insurance contracts at issue, we hold the umbrella insurers are not liable to Settoon regardless of prejudice to the umbrella insurers. First, it is clear that the notice condition in the endorsement is a "condition precedent" despite not using the precise phrase "condition precedent." The buyback clearly indicates the notice provision is a condition precedent to recovery under the endorsement. The absolute pollution exclusion states, "It is . . . agreed that the intent and effect of this exclusion is to delete from any and all coverage's . . . any . . . claim . . . in any way arising out of [pollution]." The buyback states, "It is hereby agreed that the above Absolute Exclusion shall not apply provided that the Named Assured established that all of the following conditions have been met...." Settoon must "establish" that the "conditions" have been met in order for the absolute pollution exclusion not to apply. Short of the exact phrase "condition precedent," there is almost no stronger language that could establish a "condition precedent" to recovery. Further, Settoon is a sophisticated business, not an ordinary consumer. *Cf. Joslyn Mfg.,* 30 F.3d at 633–34. Therefore, we analyze the notice provision in the buyback as a condition precedent directed at a sophisticated business.

> The bargain here "delete[s] from any and all coverage [ ]" pollution liability unless the insured gives notice within 30 days of the occurrence. Pollution liability is not stripped away because of a violation of the notice provision; rather, non-compliance prevents the exception to the exclusion from taking effect in the first instance, meaning the pollution exclusion remains in effect. In Louisiana a violation of a provision mandating notice within the policy period allows the insurer to avoid liability, *Hood,* 5 So.3d at 824–25, because the notice provision determines the scope of coverage bargained for, *Vitto,* 23 So.3d at 1053. Here, the notice provision in the buyback reflects the allocation of risk the parties bargained for. Therefore, holding the umbrella insurers liable where the conditions of the buyback were not met would alter the terms of the parties' bargain. Because Settoon did not comply

with the 30–day notice provision, which is a condition precedent to recovery under the buyback, the umbrella insurers are not liable under the Bumbershoot 2 and Bumbershoot 3 policies.

*Id.*

Turning to the instant case, the Court finds that *Settoon Towing* applies to preclude coverage. *Settoon Towing* based its holding on three grounds: (1) the strong language in the pollution exclusion; (2) the notice provision of the buyback; and (3) the vessel owner's status as a sophisticated user. Here, all three go toward dismissal.

As to the first, while the language of the instant Policy is not as strong as the pollution exclusion in *Settoon Towing*, it does clearly state that "This insurance does not apply to: . . . 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (Policy, *Am. Compl.*, Ex. A, Doc. 17-1 at 16.) Thus, the TPE is strong in its own right and unambiguously excludes coverage for pollution events not covered by the Buyback. *See Bridgefield Cas. Ins. Co. v. River Oaks Mgmt., Inc.*, 590 F. App'x 308, 313 (5th Cir. 2014) (per curiam) ("Although the exact phrase 'condition precedent' is not used, the policy plainly states that 'coverage will not be afforded . . . unless we are notified within thirty days.' Because it is clear that notice is a condition precedent to coverage under the policy, [the insurer] Bridgefield need not demonstrate prejudice to deny coverage." (citing *Settoon Towing*, 720 F.3d at 278)).

As to the second, Plaintiff concedes in its *Amended Complaint* that it failed to provide timely notice under the Buyback (*Am. Compl.* ¶ 10), and the Court finds that this is enough under *Settoon Towing* for this exception to the TPE not to apply. Defendant is right that the language of the buyback notice provision in *Settoon Towing* is virtually identical to the one in this case; like the policy in *Settoon Towing*, the Buyback requires Plaintiff to "establish" that certain

"conditions," such as timely notice, are met for the TPE not to apply. (*See* Policy, *Am. Compl.*, Ex. A., Doc. 17-1 at 17; Buyback, Doc. 18-2 at 59 ("Notwithstanding the Total Pollution Exclusion attached to this policy, the exclusion shall not apply provided that the insured establishes that all of the following conditions have been met: . . . c. The 'occurrence' became known to the insured within 30 days after its commencement and is reported to the Company within 90 days thereafter.") This is particularly important because, as in *Settoon Towing*, "Pollution liability is not stripped away because of a violation of the notice provision; rather, non-compliance prevents the exception to the exclusion from taking effect in the first instance, meaning the pollution exclusion remains in effect." *Settoon Towing*, 720 F.3d at 278. Further, as in *Settoon Towing*, "the notice provision in the buyback reflects the allocation of risk the parties bargained for. Therefore, holding the umbrella insurers liable where the conditions of the buyback were not met would alter the terms of the parties' bargain." *Id.* at 278.

Lastly, as to the sophisticated user question, the Court finds that this issue also weighs in Defendant's favor. Plaintiff fails to allege in his *Amended Complaint* anything that would indicate that it was a consumer rather than a sophisticated user, as *Settoon Towing* requires. *See Settoon Towing*, 720 F.3d at 277 ("Where policy holders are 'consumers unlikely to be conversant with all the fine print of their policies,' " strict adherence to notice provisions that are conditions precedent is not as important as when 'both parties are sophisticated businesses, which are expected to be conversant with the terms of their contracts.' "). Plaintiff argues in its opposition that it was an "unsophisticated" user (not a consumer), but a motion to dismiss is evaluated on the operative complaint, not a plaintiff's opposition. *See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (stating that, on a Rule 12(b)(6) motion, "a court assesses the legal sufficiency of the complaint"); *Becnel v. St. Charles Par. Sheriff's Office*,

No. 15-1011, 2015 WL 5665060, at *1 n. 3 (E.D. La. Sept. 24, 2015) (refusing to consider "new factual allegations" presented by plaintiff in her opposition to defendants' motion to dismiss because " '[i]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.' " (citing *In re Enron Corp Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011)). Plaintiff also submits an affidavit on the sophisticated party issue (Doc. 20-1), but considering this evidence would require the Court to convert this motion to dismiss to a motion for summary judgment, which the Court, in its discretion, chooses not to do. *See United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) ("If the district court does not rely on materials in the record, such as affidavits, it need not convert a motion to dismiss into one for summary judgment. The mere submission [or service] of extraneous materials does not by itself convert a Rule 12(b)(6) . . . motion into a motion for summary judgment." (citations, quotations, and alterations omitted)); *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991) (recognizing a district court's discretion in treating motions to dismiss as motions for summary judgment).

Here, the only fact alleged in the *Amended Complaint* on this issue is that there was an oil spill "at *one of* [*Apollo's*] *wells* located at the Happytown field in Iberville Parish[.]" (*Am. Comp.* ¶ 8.) Even construing the facts in a light most favorable to Plaintiff, the Court finds that Apollo's operation of multiple wells necessarily means it is not a consumer but rather a sophisticated user. Louisiana law confirms this. *See Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614, 633 (5th Cir. 1983) (stating, in interpretation of an indemnity provision, that "oil companies, drilling contractors, and their insurers in the offshore oil industry are experienced and sophisticated."). And Plaintiff has pointed the Court to no case finding a business "unsophisticated" for purposes of its imputed knowledge of the language of the contract, let alone one that operates multiple oil wells.

In sum, the Court finds that *Settoon Towing* is directly on point.  Under this case, the Policy's Buyback does not apply, so the TPE bars coverage.  Consequently, Defendant's motion to dismiss will be granted.

### D.  Leave to Amend

Plaintiff has requested leave to amend his complaint.  Specifically, Plaintiff argues in his opposition that it is not a "sophisticated user" and asks for leave to properly allege this in his complaint. (Doc. 20 at 6.)

Federal Rules of Civil Procedure 15(a) "requires the trial court to grant leave to amend freely," further "the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP,* 427 F.3d 987, 994 (5th Cir. 2005) (internal citations omitted). However, "leave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, 427 F.3d at 994). The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *Jones*, 427 F.3d at 994. (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal*." Mayeaux v. La. Health Serv. & Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." (citation and internal quotation marks omitted).

*Id.*, 751 F.3d at 378.

In addition, the Fifth Circuit has made clear that "denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Boggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.*

Applying this standard, the Court will reject Plaintiff's request for an additional amendment. Plaintiff should have had notice of the "sophisticated user" issue from the Court's prior Ruling and Order on Defendant's original motion to dismiss. (*See* Doc 16 at 6 ("the Court might conclude at this stage that Plaintiff is a 'sophisticated business' ").) As stated above, "repeated failures to cure deficiencies by amendments previously allowed" is a factor to consider when granting or denying leave to amend, as is undue delay. *Marucci Sports*, 751 F.3d at 378 (citation omitted). The Court finds that these factors weigh in favor of denying leave to amend.

More importantly, however, the Court finds that any amendment would be futile. As discussed above, given Apollo's operation of multiple wells and the nature of its business, Apollo cannot be a consumer. For this additional reason, the Court will deny Plaintiff leave to amend and dismiss its claims with prejudice.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss for Failure to State a Claim* (Doc. 18) filed by Underwriters at Lloyd's of London, specifically QBE Marine & Energy, is **GRANTED**, and all claims by Plaintiff Apollo Energy, LLC, are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on <u>May 1, 2019</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISANA**